**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KIANA VAUGHAN, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

TARGET CORPORATION

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

Plaintiff Kiana Vaughan, individually and on behalf of all others similarly situated, brings this class action complaint against Target Corporation ("Target" or "Defendant") and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1. Defendant manufactures, markets, labels, and distributes boxed macaroni and cheese products ("Product" or "Products") affirmatively labeled as containing "NO Artificial Flavors, Preservatives, or Synthetic Colors" or "No Artificial Preservatives" despite containing the known preservatives citric acid, lactic acid powder and/or sodium phosphate.

2. These Products include: Market Pantry Macaroni & Cheese, Market Pantry Macaroni & Cheese Spirals, Market Pantry Deluxe Shells Macaroni & Cheese, Good & Gather White Cheddar Macaroni & Cheese, Good & Gather Shells & Aged Cheddar Macaroni and Cheese, Good & Gather Shells & White Cheddar Macaroni & Cheese, Good & Gather Elbows & Classic Cheddar Macaroni & Cheese, and Good & Gather Macaroni & Cheese. Market Pantry and Good & Gather are part of Defendant's "portfolio of brands" that "spans all categories, including

apparel & accessories, essentials & beauty, food & beverage, hardlines and home."[1]

3. All of the Products are substantially similar in that Defendant represents that the Products do not contain preservatives on their front labels, yet they contain citric acid, lactic acid powder and/or sodium phosphate.

4. Citric acid, lactic acid powder and/or sodium phosphate are common preservatives added to foods and beverages to prevent the growth of bacteria.

5. There is a significant consumer demand for products that do not contain preservatives, and consumers are willing to choose products and/or pay premium prices for products without preservatives because, rightly or wrongly, reasonable consumers believe that products without preservatives are superior to products with preservatives.

6. In fact, reasonable consumers purchase the Products believing that they do not contain preservatives as promised on the packaging of each and every Product.

7. Defendant seeks to take advantage of the premium placed on products without preservatives by specifically labeling and packaging their Products as being devoid of them.

8. To the detriment of consumers, the Products do, in fact, contain preservatives as they contain citric acid, lactic acid powder and/or sodium phosphate.

9. Accordingly, as a result of Defendant's false and deceptive labeling, Plaintiff and the Classes (defined below) have been misled, have purchased products they otherwise would not have purchased, and have paid more for products than they otherwise would have paid.

10. Plaintiff brings this action on behalf of themselves and all others similarly situated to halt the dissemination of Defendant's false, misleading and deceptive advertising, correct the inaccurate perception it has created in the mind of consumers, and obtain redress for those who

[1] https://corporate.target.com/about/products-services/target-brands (last visited 09/16/2026)

have purchased Defendant's Products.

## JURISDICTION AND VENUE

11. The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

12. This Court has personal jurisdiction over Defendant because it advertises, markets, distributes, and sells the Products in New York, including in this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

14. Plaintiff Vaughan is a citizen of the State of New York, and, at all times relevant to this action, resided in Westchester County.

15. Defendant is a Minnesota corporation with headquarters at 1000 Nicolett Mall, Minneapolis, Minnesota 55403.

## FACTUAL ALLEGATIONS

### I. To the detriment of consumers, the Products contain preservatives

#### a. Citric Acid

16. Citric acid is a commonly used and recognized preservative in food and beverage products.

17. Although citric acid is a natural acid found in citrus fruits, approximately 99% of today's citric acid is manufactured by using the fungus *Aspergillus niger*.[2] Generally, the process

---

[2] Iliana E. Sweis and Bryan C. Cressey, *Potential role of the common food additive manufactured*

involves growing the fungus in a mixture of sugar and salt which causes the fungus to excrete a large amount of citric acid.[3]

18. This process is far more cost effective than extracting citric acid from fruits and allows for production of citric acid on an industrial scale. It is estimated that 70% of citric acid manufactured today is used in food and beverages.[4]

19. According to the FDA, a chemical preservative is "any chemical that, when added to food, tends to prevent or retard deterioration thereof."[5]

20. More specifically, a preservative "prevent[s] food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow[s] or prevent[s] changes in color, flavor, or texture and delay[s] rancidity (antioxidants); [and] maintain[s] freshness."[6]

21. Citric acid acts as a preservative by increasing "the acidity of a microbe's environment, making it harder for bacteria and mold to survive and reproduce."[7]

---

*citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case* reports, Toxicol Rep. (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/.

[3] Belén Max, José Manuel Salgado, et al., *Biotechnological production of citric acid*, Braz J Microbiol (Dec. 1, 2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3769771/ (last visited September 4, 2026).

[4] Iliana E. Sweis and Bryan C. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, Toxicol Rep. 2018; 5:808–812, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ (last visited September 4, 2026).

[5] 21 C.F.R. § 101.22(a)(5).

[6] International Food Information Council (IFIC) and U.S. Food and Drug Administration (FDA), *Overview of Food Ingredients, Additives & Colors*, fda.gov (Apr. 2010), https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm (last visited September 4, 2026).

[7] William Harris, *Top 10 Most Common Ingredients in Fast Food*, howstuffworks.com (May 4, 2009), https://recipes.howstuffworks.com/10-ingredients-fast-food1.htm (last visited September 4, 2026).

22. The FDA mentions citric acid as a preservative in its *Overview of Food Ingredients, Additive, and Colors* on its website.[8]

23. In 2010, the FDA sent a warning letter to Chiquita Brands International, Inc. advising that Chiquita's "Pineapple Bites" products are misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[9]

24. Industry participants also recognize that citric acid is a preservative. For example, one food additives supplier states: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[10]

25. Although there are several different food and beverage additives available that can function as preservatives, citric acid, in particular, is commonly used as a flavor and preservative in food and beverages because it is one of the stronger edible acids. Compared to other preservatives like ascorbic acid, citric acid is less expensive, more readily available in large commercial quantities, and its more tart and sour flavor is preferred for some foods and beverages.

26. Citric acid is effective as, and functions as, a preservative even when used in

---

[8] International Food Information Council (IFIC) and U.S. Food and Drug Administration (FDA), *Overview of Food Ingredients, Additives & Colors*, fda.gov (Apr. 2010), https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited September 4, 2026).

[9] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated* (Oct. 6, 2010), *available at* https://wayback.archive-it.org/7993/20170112194314/ http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm) (last visited September 4, 2026)

[10] FBC Industries, Inc., *Citrates*, https://fbcindustries.com/citrates/ (last visited September 4, 2026).

quantities as low as 0.03% of the total volume of the product.[11] However, citric acid's sourness does not start to be detected until it reaches .04%.[12] Thus, even if citric acid is present in the Products at low quantities, Defendant's "No Preservatives" representations are false, deceptive, and misleading for three separate reasons: (1) they contain citric acid, which is a preservative; (2) they contain citric acid in quantities that, on information and belief, are sufficient for the citric acid to function as a preservative; and (3) citric acid begins to act as a preservative before it affects a product's taste, thereby invalidating any argument that it is being used as some type of flavor enhancer versus as an antimicrobial agent.

**b. Lactic Acid Powder**

27. Lactic acid powder is widely recognized and used in the food industry as an antimicrobial agent, inhibiting the growth of microorganisms that cause spoilage and extending shelf life. The U.S. Food and Drug Administration specifically identifies lactic acid as having a technical effect as an "antimicrobial agent," among other uses, in foods. Substances that inhibit microbial growth and prevent deterioration fall squarely within the ordinary understanding of preservatives.[13]

28. Scientific literature likewise confirms that lactic acid and related compounds

---

[11] *See* Bayan M. Abu-Ghazaleh, *Effects of Ascorbic Acid, Citric Acid, Lactic Acid, NaCl, Potassium Sorbate and Thymus Vulgaris Extract on Staphylococcus Aureus and Escherichia Coli*, Vol. 7(1) African J. of Microbiology Research (Jan. 1, 2013), https://www.researchgate.net/publication/281357903_Effects_of_ascorbic_acid_citric_acid_lactic_acid_NaCl_potassium_sorbate_and_Thymus_vulgaris_extract_on_Staphylococcus_aureus_and_Escherichia_coli (last visited September 4, 2026).

[12] Paul L. Dawson, et al., *Effect of Temperature on the Intensity of Basic Tastes: Sweet, Salty and Sour*, Vol. 5(4), J. of Food Research, p. 1-10 (June 27, 2016), https://www.researchgate.net/publication/304528846_Effect_of_Temperature_on_the_Intensity_of_Basic_Tastes_Sweet_Salty_and_Sour (last visited September 4, 2026).

[13] FDA, Substances Added to Food (formerly EAFUS), CAS Reg. No. 50-21-5, Lactic Acid https://hfpappexternal.fda.gov/scripts/fdcc/index.cfm?id=LACTICACID&set=FoodSubstances (last visited September 4, 2026).

"impede the action of food spoilage organisms" and inhibit pathogens.[14] Importantly, like citric acid, it inhibits microbial growth at levels as low as .03% of the products' volume. *Id. supra* note 10. Thus, lactic acid powder functions as a preservative regardless of how it is labeled or described.

**c. Sodium Phosphate**

29. Sodium phosphate is widely used in processed foods to control pH and inhibit the growth of spoilage microorganisms, thereby maintaining product stability and extending shelf life. The U.S. Food and Drug Administration recognizes sodium phosphates (including mono-, di-, and trisodium phosphate) as approved food additives used for technical effects such as pH control to extend shelf life.[15] These functions are directly tied to preservation, as controlling acidity slows microbial growth and oxidative deterioration.

30. Consistent with this regulatory framework, scientific authorities explain that phosphate salts are used in foods to stabilize formulations and prevent spoilage by maintaining conditions that inhibit microbial activity and retard chemical degradation. Specifically, by acting as an acidifying agent and an acidity buffer, sodium phosphates help preserve freshness and extend shelf life—i.e., they perform a preservative function.[16] Accordingly, the inclusion of sodium phosphates in the Products serves a preservative role.

## II. Defendant's product labeling and packaging are designed to lead reasonable consumers to believe the Products do not contain preservatives

[14] Salam A. Ibrahim, Raphael D. Ayivi, et al., *Lactic Acid Bacteria as Antimicrobial Agents: Food Safety and Microbial Food Spoilage Prevention* , Foods (Dec. 17, 2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC8701396/ (last visited September 4, 2026).

[15] Corey Whelan, *Sodium Phosphate*, Healthline (June 25, 2024), https://www.healthline.com/health/sodium-phosphate (last visited September 4, 2026).

[16] Eberhard Ritz, Kai Han, et al. *Phosphate Additives in Food—a Health Risk*, Deutsches Arzteblatt International (Jan. 27, 2012) https://pmc.ncbi.nlm.nih.gov/articles/PMC3278747/#:~:text=In%20the%20European%20Union%2C%20sodium,acidity%20buffers%2C%20and%20emulsifying%20agents. (last visited September 4, 2026).

31. Defendant prominently labels the Products as containing "No Preservatives" or "No Artificial Preservatives" on the front panel and often in other locations on the product labeling as well.[17] As shown below, Defendant often displays this messaging in bold-face type or offset by a different color background.




32. However, the above Product contains the following known preservatives: citric acid, lactic acid powder and sodium phosphate.

33. Pictured below are more Products labeled as containing "No Artificial Preservatives" on the front panel. However, these Products also contain the following known preservatives: lactic acid powder and sodium phosphate.

---

[17] The Complaint will refer to Defendant's "No Preservatives" and "No Artificial Preservatives" collectively as "No Preservatives," except when the allegation requires that one version be used over the other.







34. Pictured below are more of the Products, although these bear the name Good & Gather, Defendant's higher-quality brand that "prioritize[s] taste, quality ingredients, and ease."[18] The Products' labeling states on the front panel that they contain "No Artificial Preservatives." However, this Product contains the following known preservatives: lactic acid powder and sodium phosphate.




[18] https://corporate.target.com/press/release/2019/08/good-and-gather (last visited 09/16/2026)




35. Pictured below are two more Products bearing the "Good & Gather" brand name. Although it bears the representation "No Preservatives" on the front panel, it contains the following known preservatives: lactic acid powder and sodium phosphate. Defendant further supports its healthful messaging by stating the product is "Made with Organic Pasta."






36. Overall, the Product labels are designed to lead consumers to believe the Products do not contain preservatives and are superior or healthier by stating "No Preservatives" and the word "Organic."

37. The term "Good & Gather" further drives home Defendant's deception. "Good" implies that the Product contains minimal ingredients, no artificial additives, and is healthy for its consumers. "Gather" implies that its ingredients are natural, as if they were foraged for in nature or brought from farm to table. However, they are neither good nor obtained by gathering them.

38. Reasonable consumers are not required to examine ingredient lists at the point of purchase, nor are they required to know which ingredients are widely accepted preservatives.

**II. Defendant's use of the representation "No Artificial Preservatives" does not cure its deceptive conduct**

39. With respect to some of its Products, instead of representing that they contain "No Preservatives," Defendant represents they contain "No Artificial Preservatives." In other words, Defendant attempts to cover its deception by using the qualifier "No Artificial." However, reasonable consumers do not draw technical distinctions between "artificial" and "naturally derived" preservatives; instead, they understand representations such as "No Artificial Preservatives"—especially when reinforced by the "Good & Gather" branding—to mean the Products contain no preservatives at all.

40. Defendant's labeling attempts to distinguish ingredients that may be produced through an industrial fermentation process (*i.e.,* "artificial") from ingredients harvested from a natural fruit (*i.e.,* "not artificial"); however, this exercise does not alter consumers' understanding that the Products do not contain preservatives, especially when the origin of the preservative–whether manufactured at a lab versus harvested from a fruit–is never disclosed to consumers. Also, Defendant's representations notwithstanding, the citric acid, lactic acid powder and sodium

phosphate contained in the Products are highly processed additives that do not align with consumers' understanding of Defendant's "good," "natural" and "organic" messaging concerning the preservatives it uses.

41. Accordingly, Defendant's labeling is false. At a minimum, it is misleading by omission because it communicates that the Products are free from preservatives while concealing that they contain ingredients that function as preservatives.

**III. The impact of Defendant's advertising and labeling practices**

42. Plaintiff and the Classes have been, and will continue to be, deceived and misled by Defendant's false and deceptive labeling and representations on the Products' packaging.

43. Defendant's Product labeling and packaging lead reasonable consumers to believe Defendant's Products did not contain preservatives because the Products are labeled as containing "No Preservatives."

44. Defendant's labeling and marketing of the Products as containing "No Preservatives" is a material factor influencing consumer purchase decisions.

45. Had Plaintiff and the Classes known the truth about the Products, they would not have purchased the Products and/or would not have paid the prices they paid for the Products.

46. Plaintiff and the Classes were harmed by purchasing Defendant's Products because they did not receive what they paid for, and as a result lost money and property.

**IV. Plaintiff's Experiences**

**Plaintiff Kiana Vaughan**

47. Plaintiff Vaughan purchased the Products for approximately 3 years, ending around fall 2025. Plaintiff Vaughan mainly purchased Good & Gather White Cheddar Macaroni & Cheese, and Good & Gather Shells & White Cheddar Macaroni & Cheese. On several occasions,

she purchased Products with yellow cheddar. She generally purchased these in locations near her home in Westchester County, New York.

48. Plaintiff Vaughan relied upon the "No Preservative" markings on the Products when purchasing the Products, believing that the Products did not contain any preservatives as represented. Plaintiff's belief that the package was accurately labeled was reinforced by the words "Good & Gather."

49. Had the Products not displayed the "No Preservative" marking, Plaintiff either would not have purchased the Products or would not have been willing to pay a premium for the Products. If Plaintiff could rely upon the truthfulness of Defendant's labeling, she would continue to purchase the Products in the future.

**RULE 9(b) ALLEGATIONS**

50. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

51. WHO: Defendant falsely and deceptively labeled and represented that the Products contained "No Preservatives."

52. WHAT: Defendant falsely and deceptively labeled and represented that the Products contained "No Preservatives" when the Products contain citric acid, lactic acid powder and sodium phosphate, all commonly used preservatives. Defendant's false and deceptive representations were material because a reasonable consumer would not have purchased the Products if they knew that the Products contained preservatives.

53. WHEN: Defendant falsely and deceptively labeled and represented that the Products contained "No Preservatives" continuously throughout the Class Period.

54. WHERE: Defendant's false and deceptive representations were made on the labeling of the Products.

55. HOW: Defendant made written false and deceptive representations that its Products contained "No Preservatives."

56. WHY: Defendant falsely and deceptively labeled and represented that the Products contained "No Preservatives" for the express purpose of inducing Plaintiff and other reasonable consumers to purchase the Products. Defendant profited by selling the Products to hundreds of thousands of customers.

**CLASS DEFINITION AND ALLEGATIONS**

57. Plaintiff Vaughan, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), brings this action on behalf of:

(a) Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitation period (the "Nationwide Class"); and

(b) New York Class: All persons who purchased Defendant's Products within the state of New York and within the applicable statute of limitation period (the "New York Class") and together with the Nationwide Class (the "Classes").

58. Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchase the Product for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom this case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

59. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class members is impracticable. Defendant has sold many thousands of units of the Products to Class members.

60. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a) whether the representations discussed herein that Defendant made about the Products were or are true, misleading, or likely to deceive a reasonable consumer;

(b) whether the representations discussed herein were material to a reasonable consumer;

(c) whether Defendant's conduct violates public policy;

(d) whether Defendant engaged in false or misleading advertising;

(e) whether Defendant's conduct constitutes violations of the laws asserted herein;

(f) whether Plaintiff and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

(g) whether Defendant has been unjustly enriched as a result of its deceptive labeling and marketing of the Products.

61. **Typicality – Federal Rules of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the other Class members because, among other things, Plaintiff and all Class members were comparably injured through the uniform conduct described herein.

62. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**

Plaintiff is an adequate representative of the Classes because Plaintiff's interests do not conflict with the interests of the other Class members Plaintiff seek to represent, Plaintiff retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

63. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class member to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

## COUNT I
## Violation of the New York General Business Law
## NY General Business Law § 349
## (On behalf of the New York Class)

64. Plaintiff repeats each and every allegation contained in the paragraphs above as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the New York Class.

66. New York General Business Law ("GBL") § 349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

67. Defendants engaged in deceptive acts and practices by falsely and misleadingly marketing their Products to consumers, including through the use of false and misleading Product labeling.

68. By advertising, marketing, distributing, and/or selling the Products to Plaintiff and the other members of the New York Class, Defendants engaged in and continue to engage in deceptive acts, practices, and omissions.

69. By reason of the foregoing, Defendants' conduct, as alleged herein, constitute deceptive acts and practices in violation of New York GBL § 349, and Defendants are liable to Plaintiff and the other members of the New York Class for the actual damages that they have suffered as a result of Defendants' actions. The amount of such damages is to be determined at trial, but will not be less than $50.00. Therefore, Plaintiff prays for relief.

## COUNT II
## Violation of the New York General Business Law
## NY General Business Law § 349
## (On behalf of the New York Class)

70. Plaintiff repeats each and every allegation contained in the paragraphs above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the New York Class.

72. New York GBL § 350 makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such

advertising is misleading in a material respect."

73. By advertising, marketing, distributing, and/or selling the Products with claims that it contained "No Preservatives" to Plaintiff and other New York class members, Defendants violated GBL § 350 by engaging in, and they continue to violate GBL § 350 by continuing to engage in, false advertising concerning the composition of the Products because they contain the preservative citric acid.

74. Plaintiff and the other New York Class members believed Defendants' representation that the Products contained "No Preservatives." Plaintiff and the New York Class Members would not have purchased the Products but for Defendant's misleading statements about the Products. Plaintiff was injured in fact and lost money as a result of Defendant's conduct of improperly describing its Product as containing "No Preservatives." Plaintiff and the New York Class members paid for a Product that they did not receive.

**COUNT III**
**Unjust Enrichment**
**(On behalf of the Nationwide and New York Classes)**

75. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

76. At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

77. Plaintiff and the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and the Classes were not receiving a product of the quality, nature, fitness, or value that had been

represented by Defendant and reasonable consumers would have expected.

78. Defendant has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that the Products contained no preservatives, which caused injuries to Plaintiff and the Classes because they paid a price premium due to the misleading advertising and markings on the Products.

79. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff and the Classes for unjust enrichment, in an amount to be determined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed classes, respectfully requests that the Court enter judgment in Plaintiff's favor against Defendant as follows:

A. Certifying the Classes as requested herein, designating Plaintiff as class representative, and appointing the undersigned counsel as class counsel;

B. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. Ordering restitution and disgorgement of all profits and unjust enrichment Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices.

E. Ordering Defendant to pay actual, statutory, punitive, and all other damages;

F. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G. Ordering Defendant to pay both pre- and post-judgment interest on any amount awarded; and

H. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

DATED: October 22, 2026

**REESE LLP**

By: /s/ Carlos F. Ramirez

Carlos F. Ramirez
*cramirez@reesellp.com*
Michael R. Reese
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiff and the Proposed Class*